IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| SOFIA GALLEGO, and | : | |
| JUAN CARLOS GARCIA | : | CASE NO. _____ |
| | : | |
| **Plaintiffs,** | : | |
| | : | JURY DEMAND |
| | : | |
| v. | : | |
| | : | |
| BLAISE BARRELET | : | |
| | : | |
| **Defendant.** | : | |

## COMPLAINT

Plaintiffs Sofia Gallego and Juan Carlos Garcia (the "Plaintiffs"), for their cause of action against Defendant Blaise Barrelet, herein files their Complaint against Defendant and in support thereof state as follows:

## INTRODUCTION

1. This action arises from Defendant Blaise Barrelet's (hereinafter "Defendant") role in soliciting Plaintiffs to invest in Camshaft Capital Fund, LP (hereinafter "Camshaft"), a purported hedge fund managed by his stepson William C. Morton (hereinafter "Morton").

2. Completely unbeknownst to Plaintiffs, Camshaft was a fraudulent scheme with the sole intention of fraudulently obtaining investors' funds.

3. Defendant promoted fraudulent securities transactions to Plaintiffs.

4. To solicit and secrete over $1.1 million from the Plaintiffs, Defendant made material misrepresentations and omitted material facts upon which the Plaintiffs relied in investing and loaning their funds, and entrusting the investment and management thereof in Camshaft and Morton.

5. Defendant intentionally solicited Plaintiffs' investment and loan and promoted Camshaft with false credentials, false abilities, false investment, false intentions, and false results.

6. As outlined more fully below, Defendant solicited Plaintiffs' investment and loans by making multiple materially false statements and/or omitted to state material information to Plaintiffs about Camshaft's performance, the fund's legitimacy, Morton's experience and abilities, and Defendant's personal investment in Camshaft and the results thereof.

7. The money that Plaintiffs invested in Camshaft have not been returned and the money loaned to Camshaft has not been paid back in full.

8. Due to the fraudulent solicitation, acts and omissions of Defendant, Plaintiffs have suffered losses exceeding $1.1 million, including their invested funds, unpaid loan principal, interest, attorneys' fees, and other consequential damages.

9. Defendant's acts and omissions were done maliciously, oppressively, and with intent to defraud, and Plaintiffs are entitled to punitive and exemplary damages in an amount to be proven at trial, to the maximum extent of the law.

## PARTIES

10. Plaintiff Sofia Gallego is an adult individual residing in California with a mailing address at 2310 M L King St. Calexico, California 92231.

11. Plaintiff Juan Carlos Garcia is an adult individual residing in California with a mailing address at 2310 M L King St. Calexico, California 92231.

12. Defendant Blaise Barrelet is an adult individual domiciled in and a citizen of Williamson County, Tennessee residing at 5245 Wildings Blvd., College Grove, Tennessee 37046-0020.

2

Case 3:25-cv-00835    Document 1    Filed 07/23/25    Page 2 of 14 PageID #: 2

**JURISDICTION AND VENUE**

13. This court has diversity jurisdiction pursuant to 28 U.S.C. §1332 because complete diversity of citizenship exists between the Plaintiffs (all of whom reside in and are citizens of California) and the Defendant (who is a citizen of Tennessee), and the amount in controversy exceeds $75,000.

14. Venue is proper in the Middle District of Tennessee under 28 U.S.C. §1391 because Defendant resides in and is a citizen of Franklin, Tennessee, within this District.

**FACTUAL BACKGROUND**

15. In June 2021, Juan Carlos, the son of Plaintiffs, reconnected with William Morton, his former classmate from St. John's Military Academy.

16. In December 2021, Morton invited Juan Carlos to his mother and Defendant's home in Rancho Bernardo, California, and during this overnight visit, Morton and Juan Carlos discussed investment opportunities in Camshaft.

17. The next day, Morton invited Juan Carlos, Plaintiffs, and their daughter to lunch at Ken Sushi restaurant in Del Mar, California to further discuss investing in Camshaft (the "California Camshaft Lunch Meeting").

18. Morton arrived at the California Camshaft Lunch Meeting with his stepfather, the Defendant.

19. The California Camshaft Lunch Meeting was entirely focused on soliciting Plaintiffs' investment in Camshaft.

20. During the California Camshaft Lunch Meeting, Defendant deliberately solicited, misled and defrauded Plaintiffs by purposefully making material misrepresentations of facts upon which Plaintiff relied in investing in and loaning money to Camshaft.

21. More specifically, during the California Camshaft Lunch Meeting, Defendant stated to Plaintiffs that he personally invested $1 Million in Camshaft, that the Camshaft Fund was delivering "wonderful results" and that he had several investments in other funds (unrelated to Camshaft) and his only profitable fund was Camshaft.

22. However, Plaintiffs are informed and believe and on the basis thereof allege that, contrary to these representations, the Camshaft Fund was not delivering "wonderful results", or even any positive results, and was not Defendant's only profitable investment fund.

23. Plaintiffs never would have invested in and/or loaned money to Camshaft had Plaintiffs known that Defendant had not obtained the returns he represented as having received from the Camshaft fund.

24. In addition, at the California Camshaft Lunch Meeting, Defendant falsely touted Morton's experience, expertise, capabilities, and results, which were materially misleading.

25. During the California Camshaft Lunch Meeting, Defendant touted Morton's experience with managing hedge funds, and stated that Morton knew what he was doing, that he trusted Morton, and that as a result of Morton's management, the Camshaft fund had consistently produced strong returns.

26. However, contrary to Defendant's representations to Plaintiffs during the California Camshaft Lunch Meeting, Morton, was a 23-year-old with no formal training, experience, or apparent qualifications in investing or money management, he lacked any background in regulatory compliance, and had no experience in the financial sector at all.

27. Defendant's representations concerning the experience, capabilities, expertise, and credentials of Morton during the California Camshaft Lunch Meeting are materially false and misleading and were knowingly so when made, as Morton was and is Defendant's stepson.

28. Had Plaintiffs known that Defendant's representations were false and that Morton's experience and capabilities had been completely falsified and embellished, Plaintiffs never would have invested in and/or loaned money to Camshaft, which was being solely operated and managed by Morton.

29. In addition, during the California Camshaft Lunch Meeting, Defendant vouched for the fund's legitimacy and told Plaintiffs that it was a good time to sell their home, and that he was going to sell his home.

30. Contrary to Defendant's representations at the California Camshaft Lunch Meeting, the so-called Camshaft hedge fund was a sham with no legitimate operations, existing solely as a vehicle to launder misappropriated funds.

31. Plaintiffs were impressed with Defendant and his representations regarding Camshaft's return on investment, and he was a material reason why Plaintiffs decided to invest in the fund.

32. Defendant's complete endorsement of the fund, together with his materially false representations regarding the fund's performance and legitimacy, and Morton's experience, expertise and capabilities, induced Plaintiffs to sell their primary residence in La Jolla, California for $1.45 million, and invest the majority of the proceeds therefrom in Camshaft, as outlined below.

33. Following the California Camshaft Lunch Meeting with Defendant, Plaintiffs executed a subscription agreement and invested $250,000 in Camshaft on February 1, 2022. Subscription Agreement attached as **Exhibit 1**.

34. On April 25, 2022, Plaintiffs invested an additional $550,000, bringing their total Camshaft investment to $800,000.

35. In May 2023, based on Defendant's previous misrepresentations, Plaintiffs made a $500,000 bridge loan to Camshaft, evidenced by a promissory note, which was signed by Matthew Burks, the director of Camshaft, payable by June 20, 2023, plus a $10,000 due diligence fee.

36. Between August and October 2023, Camshaft paid Plaintiffs $250,000 pursuant to the promissory note, leaving a remaining loan balance of $250,000 and accrued interest totaling over $320,000. Promissory Note attached as **Exhibit 2**.

37. According to an adversary action filed by BYJU Alpha, Inc. against Camshaft in U.S. Bankruptcy Court for the District of Delaware, Camshaft's fraudulent schemes affected other investors to the tune of $533 million, and is further evidence of the fund's fraudulent nature.

38. On April 1, 2024, Apex Group Ltd. notified Plaintiffs that it would no longer serve as Camshaft's administrator for the fund.

39. Up until this time in 2024, Plaintiffs received regular statements from Apex along with regular emails from Morton discussing the funds activity and reassuring Plaintiffs of Camshaft's continued operations.

40. In the months thereafter, Plaintiffs came to learn that others were asserting that Camshaft and the Camshaft "hedge fund" amounted to nothing more than a Ponzi Scheme to defraud investors.

41. As a direct and proximate result of Defendant's fraudulent promotion and solicitation, Plaintiffs invested a significant amount of their life savings, all of which is unaccounted for and presumed to be lost.

42. As a direct result of Defendant's fraudulent promotion and solicitation of Plaintiff's investment and in and loans to Camshaft, Plaintiffs suffered economic losses exceeding $1.1 million plus interest, attorneys' fees, and other damages.

43. Defendant's acts and omissions were done maliciously, oppressively, and with intent to defraud, and Plaintiffs are entitled to punitive and exemplary damages in an amount to be proven at trial, to the maximum extent of the law.

## COUNT ONE
## VIOLATION OF CALIFORNIA CORPORATIONS CODE § 25210 & § 25501.5
## (UNLICENSED SOLICITATION)

44. Plaintiffs incorporate by reference the preceding paragraphs as if the same were set forth herein.

45. Section 25210 of the California Corporations code states that no person shall, on behalf of a broker-dealer licensed pursuant to Section 25211, or on behalf of an issuer, effect any transaction in, or induce or attempt to induce the purchase or sale of, any security unless that broker-dealer and agent have complied with any rules as the commissioner may adopt for the qualification and employment of those agents.

46. As outlined more fully above, Defendant, in December 2021, during the California Camshaft Lunch Meeting directly solicited and induced Plaintiffs to purchase interests in Camshaft by endorsing its performance and urging investment, and thus was acting as a broker or agent, as defined in the Corporate Securities Law of 1968.

47. Defendant personally endorsed Camshaft's performance directly stating to Plaintiffs how the fund delivered wonderful results and disclosing a $1 million personal stake.

48. The securities at issue, interests in Camshaft, are "securities" under California Corp. Code §25019.

49. At the time of his solicitation of Plaintiffs, Defendant was not registered with the California Department of Financial Protection and Innovation as a broker-dealer or agent, in violation of § 25210.

50. Plaintiffs justifiably relied on Defendant's endorsement of and false representations regarding Morton and Camshaft, and invested a total of $800,000 in February and April of 2022, and made Camshaft a bridge loan in the amount of $500,000.

51. As a direct and proximate result of Defendant's unlicensed solicitation, Plaintiffs suffered damages in an amount to be proven at trial.

52. Plaintiffs are therefore entitled to recover actual damages, interest, attorney's fees, and other relief under §25501.5.

**COUNT TWO**
**VIOLATION OF CALIFORNIA CORPORATIONS CODE § 25401 & §25501**
**(CALIFORNIA BLUE SKY LAW – FRAUD IN SALE OF SECURITIES)**

53. Plaintiffs incorporate by reference the preceding paragraphs as if the same were set forth herein.

54. Section 25401 of the California Corporations Code makes unlawful any sale, purchase or offer to sell or purchase by means of an untrue statement of a material fact or omission to state a material fact necessary to prevent the statements made from being misleading.

55. By means of communication, as outlined above during the California Camshaft Lunch Meeting, Defendant made untrue statements of material facts and omitted necessary facts

8

in connection with the offer and sale of Camshaft interests, in violation of California Corp. Code §25401.

56. Defendant's representations to Plaintiffs during the California Camshaft Lunch Meeting was intertwined with Morton's pitch, and during said meeting Defendant actively promoted and solicited Plaintiffs' investment in Camshaft.

57. Defendant's false and materially misleading statements regarding the Camshaft Fund's legitimacy and performance, Defendant's personal return on his Camshaft investments, and Morton's experience and capabilities, were material to Plaintiffs and to a reasonable investor.

58. As outlined more fully above, Defendant acted with knowledge or reckless disregard for the truth of his representations.

59. Plaintiffs did not know, and had no reason to know, of the numerous material factual misstatements and omissions by Defendant, including that Camshaft was a sham fund, that Defendant had not received returns on his Camshaft investment as he represented, and that Morton's had absolutely no experience whatsoever in the financial sector and in managing hedge funds.

60. Plaintiffs justifiably relied upon Defendant's misstatements and omissions when they liquidated their home and invested $800,000 in Camshaft and later provided the bridge loan to Camshaft for $500,000.

61. As a direct and proximate result of Defendant's fraudulent representations in the solicitation and sale of Camshaft securities, Plaintiffs have sustained more than $800,000 in losses of their investment in Camshaft, and the $250,000 principal unpaid loan amount, plus unpaid interest, and other damages in excess of $1.1 million.

62. Plaintiffs are entitled to recession of their Camshaft investments, restitution, damages, and attorneys' fees under § 25501.

**COUNT THREE**
**VIOLATION OF THE TENNESSEE SECURITIES ACT, AT T.C.A § 48-1-121**
**(TENNESSEE BLUE SKY LAW – MISREPRESENTATION AND OMISSIONS)**

63. Plaintiffs incorporate by reference the preceding paragraphs as if the same were set forth herein.

64. Defendant is a resident of Tennessee, who traveled to California to solicit Plaintiffs investment in Camshaft.

65. As outlined more fully above, in violation of the Tennessee Securities Act, at T.C.A § 48-1-121, Defendant unlawfully, in connection with the offer, sale and purchase of securities:

   a. Employed a scheme to defraud Plaintiffs;

   b. Made untrue statements of a material fact and omissions of material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and

   c. Engaged in a course of business which operated as a fraud and/or deceit upon Plaintiffs.

66. As outlined more fully above, during the California Camshaft Lunch Meeting, Defendant made statements, which statements were at the time and in the light of the circumstances under which they were made false or misleading with respect to material facts, including, but not limited to, the operations and legitimacy of the Camshaft Fund, his return on his personal investment in the Camshaft Fund, and Morton's experience, expertise and abilities to manage the Camshaft fund.

67. Plaintiffs, in reliance upon Defendant's misleading and untrue representations regarding Morton and Camshaft incurred substantial damages in the form of lost investment and lost loan repayment.

68. Pursuant to the Tennessee Securities Act, at T.C.A. § 48-1-122, Defendant is liable to Plaintiffs for damages, including, but not limited to, recessionary damages and legal interest from the date of the sale for selling and purchasing securities in violation of T.C.A. § 48-1-121, and for costs and attorney's fees.

## COUNT FOUR
## NEGLIGENT MISREPRESENTATION

69. Plaintiffs incorporate by reference the preceding paragraphs as if the same were set forth herein.

70. As outlined more fully above, Defendant made misrepresentations of fact regarding Camshaft's legitimacy and performance, his own returns on investment therein, and Morton's experience, expertise and capabilities, without reasonable grounds for believing them to be true.

71. As outlined above, these statements proved false once the fraudulent nature of Camshaft emerged.

72. Defendant presented himself as a sophisticated investor in and advisor to Camshaft, creating a duty to speak truthfully and verify his statements.

73. Plaintiffs justifiably relied on Defendant's claims and representations when they invested $800,000 in Camshaft and later made the bridge loan to Camshaft for $500,000, of which only $250,000 was repaid.

74. Defendant's misrepresentations regarding Camshaft's legitimacy and performance, his own returns on investment therein, and Morton's experience, expertise and capabilities, outlined more fully above, were a substantial factor in the Plaintiffs' decision to invest in and make

11

the bridge loan to Camshaft, and Defendant's misrepresentations were the basis for Plaintiffs selling their home to make further investments in Camshaft.

75. Defendant's misrepresentations proximately caused Plaintiffs' losses, including their $800,000 investment in Camshaft and the unpaid loan balance and accrued interest on the bridge loan made to Camshaft.

76. Plaintiffs are entitled to recover all damages permitted by law.

## COUNT FIVE
## AIDING AND ABETTING FRAUD

77. Plaintiffs incorporate by reference the preceding paragraphs as if the same were set forth herein.

78. Camshaft knowingly defrauded Plaintiffs because they sold them fraudulent securities; they induced them to invest through misrepresentations and omissions, and misdirected Plaintiffs' money.

79. Camshaft intended the Plaintiffs to rely on such misrepresentations and omissions and on the integrity and lawfulness of its securities offering when invested, and the Plaintiffs reasonably relied on these to their detriment and proximately suffered substantial losses.

80. As outlined above, Defendant knowingly aided and abetted Camshaft's fraud as he helped promote and solicit Camshaft's fraudulent offerings.

81. Defendant knew or recklessly disregarded that Camshaft was operating as a fraudulent scheme and that his endorsement and material misrepresentations to Plaintiffs would induce investment.

82. Defendant knew of the securities fraud and blue sky violations outlined above, and substantially assisted their commission.

83. As outlined above Defendant's materially false statements and omissions in solicitation and promotion of Camshaft and its securities during the California Camshaft Lunch Meeting are ones that potential investors would have considered material, and Plaintiff found to be material, in deciding to invest in Camshaft.

84. Plaintiffs did not know, and had no reason to know, of the numerous material factual misstatements and omissions by Defendant, including that the Camshaft fund was a sham, and that Morton had no management and/or hedge fund experience whatsoever.

85. Plaintiffs justifiably relied on the misinformation given to them by Defendant which assisted in the fraudulent scheme, resulting in their lost investment, loan, and subsequent losses.

86. As a direct and proximate result of Defendant's aiding and abetting, Plaintiffs suffered damages to be proven at trial.

**WHEREFORE, THE PLAINTIFFS PRAY FOR THE FOLLOWING RELIEF**

1. That the Defendants be served with process and be required to answer within the time allowed by law;

2. That the Plaintiffs be awarded a judgement against the Defendant, for compensatory damages in an amount to be determined at trial in excess of $1,100,000;

3. That the Plaintiffs be awarded punitive damages against the Defendant in an amount to be determined by the Court for his intentional, willful, knowing, fraudulent, and dishonest violations of the law.

4. That the Plaintiffs be awarded their reasonable attorney's fees and costs.

5. That the Plaintiffs be awarded pre-judgment interest.

6. That a jury be impaneled to hear this action; and

7. That the Plaintiffs be awarded such other, further relief to which they may be entitled.

**DEMAND FOR JURY TRIAL**

Dated: July 23, 2025   July 23, 2025July 23, 2025                    Respectfully submitted,

*/s/ Lucas A. Davidson*
Lucas A. Davidson, TN BPR #029955
**BUCHALTER, A PROFESSIONAL CORPORATION**
1 Music Circle South, Suite 300
Nashville, TN 37203
629-224-0600
ldavidson@buchalter.com

Kyle M. Kulzer *[Pro Hac Vice Pending]*
**ALAN L. FRANK LAW ASSOCIATES, P.C.**
135 Old York Road
Jenkintown, PA 19046
(215) 935-1000
kkulzer@alflaw.net

*Attorneys for Plaintiffs*