DocuSign Envelope ID: 963A0231-0993-480E-9A0C-82CE82E6B13F



# PROMISSORY NOTE

| $ 510,000 | Miami, FL |
| --- | --- |
|  | 18 , 2023 |

      **FOR VALUE RECEIVED**, Camshaft Capital Fund, LP, a Delaware Limited Partnership ("**Borrower**"), promises to pay to Juan Carlos Garcia and Sofia ("**Note Holder**"), the principal sum (the "**Loan**") of Five Hundred Thousand United States Dollars ($ 500,000 ) plus all interest accrued in accordance with the terms of this Promissory Note (this "**Note**"), with interest on the outstanding principal balance as set forth herein.

    1.    <u>Payment Dates</u>.

        **(a)**    <u>Payment Dates</u>. The Loan shall be payable on the repayment schedule set forth on **Exhibit A** with instructions on **Exhibit B**.

        **(b)**    <u>No Prepayment Penalty</u>. The Borrower may prepay the Loan in whole or in part at any time or from time to time without penalty.

    2.    <u>Secured</u>. The Loan is secured and collateralized by the Borrower's:

        (a)    Balance sheet, with a senior position.

    3.    <u>Reserved</u>.

    4.    <u>Interest</u>.

        (a)    <u>Interest Rate</u>. Except as provided in Section 4(b), principal amounts outstanding under this Note shall bear interest at a rate per annum (the "**Interest Rate**") equal to a fixed rate of 12% per annum on the outstanding principal balance commencing on and from the date of the principal advance by Holder hereunder and ending on the Maturity Date.

        (b)    On the date hereof, Maker shall prepay to Holder a one-time due diligence and underwriting fee of Ten Thousand United States Dollars ($ 10,000 ).

        (c)    <u>Default Interest</u>. If any amount payable hereunder is not paid when due (without regard to any applicable grace period), whether at stated maturity, by acceleration, or otherwise, such overdue amount shall bear interest at the Interest Rate plus two percent (2%) (the "**Default Rate**").

        (d)    <u>Computation of Interest</u>. Except as provided in Section 4(b), principal amounts outstanding under this Note shall bear interest at a rate per annum (the "**Interest**

**Rate**") equal to a fixed rate of One and 00/100 percent (1.00%) per month (based on a 30-day month) simple interest on the outstanding principal balance commencing on and from the date of the principal advance by Holder hereunder and ending on the Maturity Date.

(e) <u>Interest Rate Limitation</u>. If at any time and for any reason whatsoever, the interest rate payable on the Loan shall exceed the maximum rate of interest permitted to be charged by the Noteholder to the Borrower under applicable law, such interest rate shall be reduced automatically to the maximum rate of interest permitted to be charged under applicable law.

5. <u>Covenants.</u> Maker undertakes that it will, until this Note is repaid in full:

(a) *Notice of Default*: Give Holder notice in writing immediately upon becoming aware of the occurrence of any Event of Default;

(b) *Information*: Keep Holder fully and promptly informed to such extent and in such form and detail as Holder may from time to time reasonably require, with particulars of any matters concerned with and arising out of the activities of Maker; and

(c) *Conduct of Business:* Conduct and carry on its business in a proper, efficient and professional manner and not make any substantial alteration in the mode of conduct of that business and keep or cause to be kept proper books of accounts relating to such business.

6. <u>Payment Mechanics</u>.

(a) <u>Manner of Payment</u>. All payments of principal and interest shall be made in US dollars no later than 5:00 PM Eastern Time on the date on which such payment is due. Such payments shall be made by electronic transfer of immediately available funds to the Noteholder's account at a bank specified by the Noteholder in writing to the Borrower from time to time.

(b) <u>Application of Payments</u>. All payments shall be applied, *first*, to fees or charges outstanding under this Note, *second*, to accrued interest, and, *third*, to principal outstanding under this Note.

(c) <u>Business Day</u>. Whenever any payment hereunder is due on a day that is not a Business Day, such payment shall be made on the next succeeding Business Day, and interest shall be calculated to include such extension. "**Business Day**" means a day other than Saturday, Sunday, or other day on which commercial banks in Miami, FL are authorized or required by law to close.

7. <u>Representations and Warranties</u>. The Borrower represents and warrants to the Noteholder as follows:

(a) <u>Compliance with Law</u>. The Borrower is in compliance with all laws, statutes, ordinances, rules, and regulations applicable to or binding on the Borrower.

(b)     Power and Authority. The Borrower has the requisite capacity, power and authority to execute, deliver, and perform its obligations under the this Note and the Security Agreement.

(c)     Authorization; Execution and Delivery. The Borrower has duly executed and delivered this Note and the Security Agreement.

(d)     No Approvals. No consent or authorization of, filing with, notice to, or other act by, or in respect of, any Governmental Authority or any other Person is required in order for the Borrower to execute, deliver, or perform any of its obligations under this Note or the Security Agreement.

(e)     No Violations. The execution and delivery of this Note and the Security Agreement and the consummation by the Borrower of the transactions contemplated hereby and thereby do not and will not (a) violate any Law applicable to the Borrower or by which any of Borrower's properties or assets may be bound; or (b) constitute a default under any material agreement or contract by which the Borrower may be bound.

(f)     Enforceability. Each of the Note and the Security Agreement is a valid, legal, and binding obligation of the Borrower, enforceable against the Borrower in accordance with its terms.

(g)     No Litigation. No action, suit, litigation, investigation, or proceeding of, or before, any arbitrator or Governmental Authority is pending or threatened by or against the Borrower or any of Borrower's property or assets (a) with respect to the Note, the Security Agreement, or any of the transactions contemplated hereby or thereby or (b) that could be expected to materially adversely affect the Borrower's financial condition or the ability of the Borrower to perform its obligations under the Note or the Security Agreement.

(h)     PATRIOT Act; Anti-Money Laundering. The Borrower is, in compliance in all material respects with the PATRIOT Act, and any other applicable terrorism and money laundering laws, rules, regulations, and orders.

(i)     Anti-Corruption Laws and Sanctions.

(i)     "**Sanctioned Country**" means, at any time, a country or territory which is itself the subject or target of any comprehensive or country-wide Sanctions.

(ii)    "**Sanctioned Person**" means, at any time, (a) any person listed in any Sanctions-related list of designated persons maintained by a Sanctions Authority; (b) any person operating, organized, or resident in a Sanctioned Country, (c) any person owned or controlled by any such person or persons described in the foregoing clauses (a) or (b), or (d) any person that is the subject or target of any Sanctions.

(iii) "**Sanctions**" mean all economic or financial sanctions or trade embargoes imposed, administered, or enforced from time to time by a Sanctions Authority.

(iv) "**Sanctions Authority**" means OFAC, the U.S. Department of State, the United Nations Security Council, the European Union, Canada, or other relevant sanctions authority.

(v) The Borrower is in compliance with all laws, rules, and regulations of any jurisdiction applicable to the Borrower from time to time concerning or relating to bribery or corruption, including the United States Foreign Corrupt Practices Act of 1977 ("**Anti-Corruption Laws**").

(vi) The Borrower is not and no agent of the Borrower that will act in any capacity in connection with or benefit from the Loan, is a Sanctioned Person.

(vii) No use of proceeds of the Loan or other transaction contemplated by this Note will violate any Anti-Corruption Law or applicable Sanctions.

8. Events of Default. The occurrence and continuance of any of the following shall constitute an "**Event of Default**" hereunder:

(a) Failure to Pay. The Borrower fails to pay (i) any principal amount of the Loan when due; (ii) any interest on the Loan within five (5) days after the date such amount is due; or (iii) any other amount due hereunder within ten (10) days after such amount is due.

(b) Breach of Representations and Warranties. Any representation or warranty made by the Borrower to the Noteholder herein or in the Security Agreement contains an untrue or misleading statement of a material fact as of the date made.

(c) Cross-Defaults. The Borrower fails to pay when due any of its debt (other than debt arising under this Note), or any interest or premium thereon, when due and such failure continues after the applicable grace period, if any, specified in the agreement or instrument relating to such debt.

(d) Bankruptcy; Insolvency.

(i) The Borrower institutes a voluntary case seeking relief under any law relating to bankruptcy, insolvency, reorganization, or other relief for debtors.

(ii) An involuntary case is commenced under any law relating to bankruptcy or insolvency.

(iii) The Borrower makes a general assignment for the benefit of creditors.

4

(iv) The Borrower is unable, or admits in writing its inability, to pay Borrower's debts as they become due.

(v) A case is commenced against the Borrower or Borrower's assets seeking attachment, execution, or similar process against all or a substantial part of Borrower's assets.

(e) <u>Failure to Give Notice.</u> The Borrower fails to give the notice of Event of Default specified in Section 7.

9. <u>Notice of Event of Default</u>. As soon as possible after it becomes aware that an Event of Default has occurred, and in any event within two (2) Business Days, the Borrower shall notify the Noteholder in writing of the nature and extent of such Event of Default and the action, if any, it has taken or proposes to take with respect to such Event of Default.

10. <u>Remedies</u>. Upon the occurrence and during the continuance of an Event of Default, the Noteholder may, at its option, by written notice to the Borrower declare the outstanding principal amount of the Loan, accrued and unpaid interest thereon, and all other amounts payable hereunder immediately due and payable; *provided, however*, if an Event of Default described in Sections 7(c)(i), 8(d)(iii), or 8(d)(iv) shall occur, the outstanding principal amount, accrued and unpaid interest, and all other amounts payable hereunder shall become immediately due and payable without notice, declaration, or other act on the part of the Noteholder.

11. <u>Expenses</u>. The Borrower shall reimburse the Noteholder on demand for all reasonable out-of-pocket costs, expenses, and fees, including the reasonable fees and expenses of counsel, incurred by the Noteholder in connection with the negotiation, documentation, and execution of this Note and the enforcement of the Noteholder's rights hereunder.

12. <u>Notices</u>. All notices and other communications relating to this Note shall be in writing and shall be deemed given upon the first to occur of (x) deposit with the United States Postal Service or overnight courier service, properly addressed and postage prepaid; (y) transmittal by facsimile or e-mail properly addressed (with written acknowledgment from the intended recipient such as "return receipt requested" function, return e-mail, or other written acknowledgment); or (z) actual receipt by an employee or agent of the other party. Notices hereunder shall be sent to the following addresses, or to such other address as such party shall specify in writing:

(a) If to the Note Holder:

Sofia Gallego

E-mail: sgallegoca1@gmail.com

(b) If to the Borrower:

      Camshaft Capital Fund, LP

      16850 Collins Ave #112408

      Sunny Isles Beach, FL 33160

      E-mail: matthew@camshaftcapital.com

13. <u>Governing Law</u>. This Note and any claim, controversy, dispute, or cause of action (whether in contract, tort, or otherwise) based on, arising out of, or relating to this Note and the transactions contemplated hereby shall be governed by and construed in accordance with the laws of the State of Florida.

14. <u>Disputes</u>.

    (a)     <u>Submission to Jurisdiction</u>.

        (i)     The Borrower irrevocably and unconditionally (A) agrees that any action, suit, or proceeding arising from or relating to this Note may be brought in the courts of the State of Florida sitting in Miami Dade County, and (B) submits to the exclusive jurisdiction of such courts in any such action, suit, or proceeding. Final judgment against the Borrower in any such action, suit, or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

        (ii)     Nothing in this Section 13(a) shall affect the right of the Noteholder to bring any action, suit, or proceeding relating to this Note against the Borrower or its properties in the courts of any other jurisdiction.

        (iii)     Nothing in this Section 13(a) shall affect the right of the Noteholder to serve process upon the Borrower in any manner authorized by the laws of any such jurisdiction.

    (b)     <u>Venue</u>. The Borrower irrevocably and unconditionally waives, to the fullest extent permitted by law, (i) any objection that it may now or hereafter have to the laying of venue in any action, suit, or proceeding relating to this Note in any court referred to in Section 13(a), and (ii) the defense of inconvenient forum to the maintenance of such action, suit, or proceeding in any such court.

    (c)     <u>Waiver of Jury Trial</u>. THE BORROWER HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY, WHETHER BASED ON CONTRACT, TORT, OR ANY OTHER THEORY.

15. <u>Successors and Assigns</u>. This Note may be assigned or transferred by the Noteholder to any individual, corporation, company, limited liability company, trust, joint

venture, association, partnership, unincorporated organization, governmental authority, or other entity.

  16. <u>Integration</u>. This Note constitutes the entire contract between the Borrower and the Noteholder with respect to the subject matter hereof and supersedes all previous agreements and understandings, oral or written, with respect thereto.

  17. <u>Amendments and Waivers</u>. This Note may be amended with the agreement of the Borrower and Noteholder. No term of this Note may be waived, modified, or amended, except by an instrument in writing signed by the Borrower and the Noteholder. Any waiver of the terms hereof shall be effective only in the specific instance and for the specific purpose given.

  18. <u>No Waiver; Cumulative Remedies</u>. No failure by the Noteholder to exercise and no delay in exercising any right, remedy, or power hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, or power hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, or power. The rights, remedies, and powers herein provided are cumulative and not exclusive of any other rights, remedies, or powers provided by law.

  19. <u>Severability</u>. If any term or provision of this Note or the Security Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Note or the Security Agreement or render such term or provision invalid or unenforceable in any other jurisdiction.

  20. <u>Counterparts</u>. This Note and any amendments, waivers, consents, or supplements hereto may be executed in counterparts, each of which shall constitute an original, but all of which taken together shall constitute a single contract. Delivery of an executed counterpart of a signature page to this Note by facsimile or in electronic ("pdf" or "tif") format shall be as effective as delivery of a manually executed counterpart of this Note.

  21. <u>Electronic Execution</u>. The words "execution," "signed," "signature," and words of similar import in this Note shall be deemed to include electronic and digital signatures and the keeping of records in electronic form, each of which shall be of the same effect, validity, and enforceability as manually executed signatures and paper-based recordkeeping systems, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 U.S.C. § 7001 *et seq*.), the Electronic Signatures and Records Act of 1999 (N.Y. State Tech. Law §§ 301-309), and any other similar state laws based on the Uniform Electronic Transactions Act.

  IN WITNESS WHEREOF, the Borrower has executed this Note as of May <u>18</u> 2023.

ACKNOWLEDGED AND ACCEPTED
BY THE NOTE HOLDER

Sofia Gallego and Juan Carlos Garcia

By: *Juan Carlos Garcia*

Name: Juan Carlos Garcia and Sofia Gallego

Title: _____

ACKNOWLEDGED AND ACCEPTED
BY THE BORROWER

Camshaft Capital Fund, LP

By: *Matthew Burks*

Name: Matthew Burks

Title: Director

8

# EXHIBIT A

## LOAN REPAYMENT SCHEDULE

On June 20th the Note is due. interest will be paid on the outstanding balance of $ 500,000 , in addition to the one-time due diligence fee of $ 10,000 .

DocuSign Envelope ID: 963A0231-0993-480E-9A0C-82CE82E6B13F

# EXHIBIT B

## Wire Instructions for Noteholder

| | |
|---|---|
| **Bank Name** | Chase |
| **ABA/Routing Number** | 021000021 |
| **Account Address** | PO Box 2647, Calexico Ca 92232-2647 |
| **Account Number** | 910048255 |
| **Account Name** | Juan C Garcia |

DocuSign Envelope ID: 963A0231-0993-480E-9A0C-82CE82E6B13F

# EXHIBIT C

## Wire Instructions for Borrower

Follow the instructions below to deposit securities or cash into a J.P. Morgan account

**J.P.Morgan**

| | |
|---|---|
| Account in the name of: CAMSHAFT CAPITAL FUND, LP | Account number: 000000741806894 |
| US Dollar wires should be sent to: | JPMorgan Chase Bank, N.A. |
| | 383 Madison Avenue |
| | New York, NY 10017 |
| | ABA # - 021000021 |
| | SWIFT # - CHASUS33 (optional for Domestic wire transfers) |
| | Account Number - 000000741806894 |
| | For Account of - CAMSHAFT CAPITAL FUND, LP |